UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------x
STEPHEN J. EDMONSON,

                         Plaintiff,

                                              MEMORANDUM & ORDER

          -against-                          CV 03-1025(JS)(ETB)

COUNTY OF NASSAU, NASSAU COUNTY
DEPARTMENT OF RECREATION AND PARKS,
THOMAS S. GULOTTA, JESS A. BUNSHAFT,
JOHN KIERNAN, NICOLAS DELLISANTI,
ABRAM C. WILLIAMS, KEVIN E. OCKER,
BRUCE E. FOLEY, RUSSELL FURCHAK,
RICHARD JACOBS, ESTATE OF RICHARD
JACOBS, EDDIE MORGEESE,

                         Defendants.
---------------------------------------x
<u>Appearances</u>:
For Plaintiff              Frederick K. Brewington, Esq.
                           Law Offices of Frederick K. Brewington
                           50 Clinton Street, Suite 501
                           Hempstead, NY 11550


For Defendants             Carl S. Sandel, Esq.
                           Liora M. Ben-Sorek, Esq.
                           Donna A. Napolitano, Esq.
                           Office of the Nassau County Attorney
                           One West Street
                           Mineola, NY 11501


SEYBERT, District Judge:

          On February 28, 2003, Plaintiff Stephen Edmonson

("Plaintiff"), a caucasian male who suffers from dyslexia,

commenced this action against Defendants County of Nassau, Nassau

County Department of Recreation and Parks ("Parks Department"),[1]

---
[1]   The Court will use the term "County" to collectively refer
to both Defendant County of Nassau and Defendant Nassau County
Department of Recreation and Parks.

Thomas Gulotta, Jess Bunshaft, John Kiernan, Nicolas Dellisanti, Abram Williams, Kevin Ocker, Bruce Foley, Russell Furchak, Eddie Morgeese, Richard Jacobs and the Estate of Richard Jacobs. The Complaint contains claims for retaliation and discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101(e), <u>et seq.</u> ("ADA") and New York Executive Law § 296 (New York Human Rights Law, or "NYHRL"), and state law claims for breach of contract and fraud.

Pending before the Court is Defendants' motion for summary judgment. For the reasons explained below, Defendants' motion is GRANTED in part and DENIED in part.

<u>Background</u>

All facts presented herein have been taken from the Parties' Rule 56.1 Statement and Counter-Statement.

Plaintiff suffers from dyslexia, a learning disorder that impairs a person's ability to recognize and comprehend words. Dyslexia often manifests itself in a person's writing, causing transposition of letters and numbers. (Defs.' Rule 56.1 Statement ¶ 2; Pl.'s Rule 56. 1 Statement ¶ 2.) Plaintiff attended special educational institutions for both elementary school and high school. (Pl.'s 56.1 ¶ 5.) He also attended classes as a part-time non-matriculated student at Nassau Community College. (Defs.' 56.1 ¶¶ 12, 15; Pl.'s 56.1 ¶¶ 9, 11.)

In November 1983, Plaintiff was hired by the Parks Department to work part-time as a security officer. (Defs.' 56.1 ¶ 21; Pl.'s 56.1 ¶¶ 21, 52.) He worked two days per week - from midnight to 8 a.m - patrolling the various Nassau County Parks. (Def.'s 56.1 ¶¶ 22, 24; Pl.'s ¶ 15.) His supervisors were Lieutenant Robert Eperjesi ("Eperjesi") and Captain John Nangle ("Nangle").

Between 1985 and 1986, Plaintiff's performance evaluations were generally favorable. The reports, which were completed by Nangle, indicate that Plaintiff's work was satisfactory, and that Plaintiff was above average with respect to attendance and punctuality. The evaluations noted that Plaintiff had "some difficulty in phrasing sentences and spelling." (Def.'s 56.1 ¶¶ 27, 28; Pl.'s ¶¶ 16, 17.)

Plaintiff's performance evaluations for 1987 and 1988 were not as favorable. The reports, which were prepared by Nangle and Lieutenant Raymond Gray ("Gray") respectively, described Plaintiff as: lacking some of the fundamentals necessary for job; experiencing difficulty with meeting deadlines; tending to waste or abuse time; having difficulty working with others; and requiring considerable supervision and repeated instruction. (Defs.' 56.1 ¶¶ 29, 32; Pl.'s 56.1 ¶¶ 18, 32.) The 1987 evaluation also contained a note from Defendant Ocker, stating "many adverse circumstances - does not carry out directions, will not adhere to direction from

supervisors. Is not a candidate for a career in Park Rangers."
(Defs.' 56.1 ¶ 29; Pl.'s 56.1 ¶ 18.) The evaluations during both
years, however, noted that Plaintiff was above average with respect
to attendance and punctuality. (Pl.'s ¶¶ 18, 21.)

In 1988, Plaintiff first sought full-time employment with
the Parks Department. (Defs.' 56.1 ¶ 30; Pl.'s 56.1 ¶ 19.) The
Parties dispute whether this was the first time that Plaintiff
disclosed his dyslexia. While the Parks Department maintains that
this was the first time that Plaintiff informed them of his
disability, Plaintiff contends that this fact was made known to the
Parks Department as early as 1986. (Defs.' 56.1 ¶ 31; Pl.'s 56.1
¶¶ 20, 53.)

When Plaintiff's application for full-time employment was
denied, he filed a complaint with the Nassau County Commission of
Human Rights ("NCCHR"), alleging that he was denied the position
because of his dyslexia. (Defs.' ¶ 33; Pl.'s ¶ 22.) On March 7,
1989, the NCCHR issued a "no probable cause" finding with respect
to Plaintiff's claim.

Despite his failure to obtain full-time work, Plaintiff
continued in his part-time position. His 1989 performance
evaluation reflects similar criticisms to those found in the 1987-
88 performance evaluations. In addition, the 1989 performance
appraisal noted deficiencies in the way Plaintiff wrote his
incident reports, and the fact that Plaintiff was not always alert.

(Defs.' 56.1 ¶ 34; Pl.'s 56.1 ¶ 23.)  But the evaluation was not altogether unfavorable.  For example, the evaluation notes Plaintiff's satisfactory performance in productivity, attendance, human relations, and attitude towards his supervisors.  (Pl.'s 56.1 ¶ 23.)

In 1990, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYDHR"), alleging that he was denied a promotion to full-time work because of his disability.  (Def.'s 56.1 ¶ 35; Pl.'s 56.1 ¶ 24.)  Plaintiff claimed that another employee, E. Henderson, was promoted to a full time position even though Plaintiff was more qualified than him.  The NYDHR agreed with Plaintiff and found that there was probable cause to believe that the Parks Department had engaged in unlawful discriminatory practices.  (Defs.' 56.1 ¶ 36; Pl.'s 56.1 ¶ 24.)  The NYDHR issued its determination on August 23, 1994.  In 1997, however, the matter was re-opened and reviewed by the NYHDR.  After re-visiting its determination, the NYDHR concluded that there was no probable cause to believe that the Parks Department had engaged in unlawful discrimination.  (Defs.' 56.1 ¶¶ 37-38; Pl.'s ¶¶ 24, 25.)

Throughout this time, Plaintiff continued working in his part-time position.  His 1990 performance evaluation indicated that his performance was satisfactory, with the exception of his written communication skills.  (Defs.' 56.1 ¶ 39; Pl.'s ¶ 26.)  His 1991

evaluation was similar to those issued from 1987-89 in that it described Plaintiff has having "some gaps in fundamentals necessary for [the] job." (Defs.' 56.1 ¶ 40; Pl.'s 56.1 ¶ 40.) The evaluation stated that his patrol reports were not always accurate, and that Plaintiff needed to improve with respect to alarm procedures. Plaintiff's 1992 and 1993 evaluations were, essentially, satisfactory. (Defs.' 56.1 ¶¶ 41, 42; Pl.'s 56.1 ¶ 28.) The evaluations contained the same criticisms that had been raised in the past: Plaintiff's lack of some of the fundamentals necessary for the job, and his difficulties with respect to written expression and working with others.

On December 5, 1994 Plaintiff was terminated from his part-time position. (Defs.' 56.1 ¶ 43; Pl.'s 56.1 ¶ 29.) The Parties disagree concerning the motive for the discharge. Defendants assert that Plaintiff was discharged "for conduct unbecoming a park ranger and misusing his authority as a park ranger while off duty and on private property." (Defs.' 56.1 ¶ 43.) Plaintiff claims that his termination was pretext for discrimination based upon his disability. (Pl.'s 56.1 ¶¶ 29-30.) Plaintiff points out that he was restored to his part-time position pursuant to a June 9, 1995 finding by arbitrator Kathleen Divine ("Divine"). Divine found that the incident was "merely a run-in between two individuals who have indirectly crossed paths," and

ordered Plaintiff reinstated to his part-time position.  (Defs.'
56.1 ¶ 45; Pl.'s 56.1 ¶¶ 29-31.)

Plaintiff's 1995 and 1996 performance evaluations ranged
from satisfactory to above satisfactory, with a few criticisms.
(Defs.' 56.1 ¶¶ 46-47; Pl.'s 56.1 ¶ 32.)  Plaintiff's 1995
evaluation indicated that he had difficulty with written
expression.  Plaintiff's 1996 evaluation indicated that Plaintiff
had a problem with writing up incident reports, experienced
difficulty working with others and, at times, required instruction
on procedures.  The 1996 evaluation noted, however, that Plaintiff
showed effort in discharging his duties.  (Defs.' 56.1 ¶ 47.)

Notwithstanding his performance in the part-time
position, from 1994 onward, Plaintiff continuously sought full-time
employment.  In response to repeated denials of his applications,
he filed a grievance with the Civil Service Employees Association,
Local 830.  Pursuant to a November 27, 1997 stipulation settling
Plaintiff's grievances, Plaintiff was appointed to the position of
full-time Security Officer, effective December 19, 1997.  (Defs.'
56.1 ¶¶ 48-49; Pl.'s 56.1 ¶¶ 34-35.)  The appointment was
conditioned upon Plaintiff's satisfactory completion of a twenty-
six week probationary period.  (Defs.' 56.1 ¶ 49; Pl.'s 56.1 ¶ 35.)
Plaintiff contends that the period could have been shortened to as
few as eight weeks, but Defendants elected to adopt a twenty-six
week period with respect to him.  (Pl.'s 56.1 ¶ 36.)

Upon his promotion to the full-time position, Plaintiff's supervisors were Edward Morgeese ("Morgeese"), Raymond Becker ("Becker") and Robert Jacobs ("Jacobs"). (Defs.' 56.1 ¶ 52; Pl.'s 56.1 ¶ 52.) Chief Russell Furchak ("Furchak") had overall responsibility for Plaintiff's department. (Defs.' 56.1 ¶ 53; Pl.'s 56.1 ¶ 38.) In addition, at the time of Plaintiff's promotion, John Kiernan ("Kiernan") was the Commissioner of the Parks Department, and Nicholas Dellisanti ("Dellisanti") and Kevin Ocker ("Ocker") were Deputy Commissioners. (Defs.' 56.1 ¶¶ 54-55; Pl.'s 56.1 ¶ 39.) Plaintiff acknowledges that, after gaining full-time employment as a Security Officer I, he did not personally tell any of his supervisors that he had dyslexia. (Defs.' 56.1 ¶ 59; Pl.'s 56.1 ¶ 43.)

On June 17, 1998, during the probationary period, Plaintiff was discharged from his full-time position. (Defs.' 56.1 ¶ 62; Pl.'s 56.1 ¶ 46.) The Parties disagree concerning the reason for Plaintiff's dismissal. Plaintiff argues that he was wrongfully terminated because of his disability and his history of filing discrimination charges against the County. (Pl.'s 56.1 ¶ 46.) Defendant argues that Plaintiff was terminated because of unsatisfactory job performance. (Def.'s 56.1 ¶¶ 62-63.) Plaintiff does not dispute that his evaluation for the December 1997-June 1998 period, which was completed by Jacobs, indicated that: his job knowledge and skills were inadequate for the job; he continually

8

needed direction with respect to his duties; his work was not always up to standard; he wasted too much time engaged in non-work activities; and he had difficulty with written expression. (Defs.' 56.1 ¶ 63; Pl.'s 56.1 ¶ 47.) Plaintiff notes that he obtained satisfactory or above satisfactory grades in several categories, including productivity, oral communications, human relations, and attitude towards supervision. (Pl.'s 56.1 ¶ 47.)

In response to his termination, Plaintiff pursued several avenues for redress. In September 1998, he filed an Article 78 proceeding, claiming that he was improperly terminated. (Defs.' ¶ 66.) On October 12, 1998, he filed a complaint with the NYDHR claiming that he was improperly discharged. The Article 78 proceeding was dismissed in March 1999, and the NYDHR issued a determination dismissing Plaintiff's complaint in October 2002.

On February 28, 2003, Plaintiff commenced this action. Plaintiff contends that, while he was a part-time employee, Defendants were aware of his disability and accommodated him by allowing him to take his written reports home, and finish them after his shift was done. (Pl.'s 56.1 ¶ 54.) Once Plaintiff was elevated to full time status, however, Plaintiff claims that Defendants began to deny him this accommodation. (Pl.'s 56.1 ¶ 55.) In addition, Plaintiff alleges that Defendants singled him out and created a false daily record of his shortcomings in order to justify terminating Plaintiff during his probationary period.

(Pl.'s ¶ 56.)  Plaintiff claims that Defendants terminated him because he was disabled and in retaliation for his persistent complaints of discrimination.

<u>DISCUSSION</u>

Defendants have raised the following objections in their motion for summary judgment: (1) Plaintiff has failed to state a prima facie case of discrimination under the ADA because Defendants were never aware of Plaintiff's condition and limitations, and Plaintiff never asked for an accommodation; (2) Plaintiff's NYHRL retaliation claims must be dismissed because Plaintiff has not established a prima facie case, and has not rebutted Defendants' legitimate reason for his discharge; (3) Plaintiff's state law claim for fraud is precluded because Plaintiff never filed a Notice of Claim, or, in the alternative, Plaintiff has failed to adequately plead a cause of action for fraud; and (4) Plaintiff's probationary status precludes his beach of contract claim.

I.   <u>Standard of Review</u>

"Summary judgment is appropriate where there is no genuine dispute concerning any material facts, and where the moving party is entitled to judgment as a matter of law." <u>In re Blackwood Assoc., L.P.</u>, 153 F.3d 61, 67 (2d Cir. 1998)(citing Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Id.

When ruling on a motion for summary judgment in a discrimination case, "additional considerations should be taken into account. A trial court must be cautious about granting summary judgment to an employer when . . . its intent is at issue. . . . Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994). Thus, a court should not grant an employer's motion for summary judgment unless "the evidence of discriminatory intent is so slight that no rational jury could find in [the P]laintiff's favor." Id. at 1226. This deferential standard, however, should not be applied so as to create a de facto bar on summary judgment in all employment

discrimination cases.  See Weinstock v. Columbia Univ., 224 F.3d 33, 41-42 (2d Cir. 2000) ("the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'" (quoting McLee v. Chrysler Corp., 38 F.3d 67, 68 (2d Cir. 1994)).

In responding to a motion for summary judgment, a plaintiff's "mere conclusory allegations or denials will not suffice." William v. Smith, 781 F.2d 319, 323 (2d Cir. 1986).  A plaintiff in a discrimination case must offer "concrete particulars to substantiate the claim." Hunt v. Tektronix, Inc., 952 F. Supp. 998, 1002 (W.D.N.Y. 1997) (citing Meiri v. Dacon, 759 F.2d 989 (2d Cir. 1985).  Indeed, when a motion for summary judgment is made, it is time to "to put up or shut up. . . . [U]nsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d 33, 41 (2d Cir. 2000) (internal citations omitted).  It is within this framework that the Court addresses Defendant's motion.

II.  <u>Plaintiff's Failure To Accomodate Claims</u>

"For a plaintiff who can perform a desired position with a reasonable accommodation to establish a prima facie case of discrimination because of disability, he must show: (1) that [ ]he is an individual who has a disability within the meaning of the ADA, (2) that an employer covered by the statute had notice of h[is] disability, (3) that with reasonable accommodation, [ ]he could perform the essential functions of the position sought, and

(4) that the employer has refused to make such accommodations." Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 216 (2d Cir. 2001) (internal quotations omitted). "In general . . . it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed." Taylor v. Principal Fin. Group, 93 F.3d 155, 161 (5th Cir. 1996); see also Mazza v. Bratton, 108 F. Supp. 2d 176 (E.D.N.Y. 2000).

Defendants argue that Plaintiffs ADA claims must be dismissed because, after Plaintiff obtained the full-time position, Plaintiff never informed any of his supervisors of his disability and never specifically requested an accommodation. Plaintiff contends that Defendants were aware of his disability because of his long history of disability-based discrimination claims against the County, and because his personnel file contained a letter detailing his impediment. He contends that, contrary to Defendants' assertions, he requested an accommodation to complete his written reports at home after his shift was finished, but his request was denied. In addition, Plaintiff submits an affidavit — which is plainly contradicted by his deposition testimony and contrary to his response to Defendants' 56.1 Statement — indicating that he informed his superiors, specifically the now apparently deceased Defendant Jacobs, of his disability and requested an accommodation. (Pl.'s Aff. in Opp. to Defs.' Mot. for Summ. J.)

Viewing the evidence, as the Court must, in a light most favorable to the non-moving party, the Court finds Plaintiff has met his prima facie burden. With respect to Defendants' knowledge of his disability, the Court finds that there is sufficient evidence for a fact finder to conclude that Defendants were aware of Plaintiff's condition. Plaintiff had a long history of challenging the County's employment/promotion decisions based upon his disability. Indeed, the very means by which Plaintiff attained his position was a settlement of a disability-based discrimination claim.[2] Moreover, the letter from Plaintiff's physician contained in his personnel file indicates that he suffered from dyslexia. Based on these facts, there is sufficient evidence for a jury to conclude that Defendants knew, or were on notice of his disability.[3]

In addition, the Court finds that Plaintiff has met, albeit barely, his prima facie burden concerning his request for a reasonable accommodation. In Plaintiff's deposition, he testified

---

[2]    Defendants point out that all of "Plaintiff's numerous complaints filed with the State Human Rights Commission" were dismissed with a finding that there was "no probable cause" that "Defendants engaged in unlawful discriminatory practices. (Defs.' Reply Mem. of Law at 3.) The fact that Plaintiff's complaints were dismissed has no bearing upon the fact that the filing of such complaints, arguably, put Defendants on notice of Plaintiff's disability.

[3]    Plaintiff's self-serving, self-contradicting affidavit provides little support for Defendants purported knowledge of his disability.

that, while he was a part-time employee, the Parks Department accommodated his writing difficulties by allowing him to take his written work home to correct errors in grammar and syntax. (Pl.'s Dep. at 177-79.) Plaintiff further testified that, after his promotion to full-time status, he requested a similar accommodation, but it was denied. (Id.) Defendants' primary rebuttal evidence consists of an affidavit submitted by Defendant Furchak, explaining that the purported accommodation that Plaintiff received as a part-time employee was not possible under County policy. Specifically, Furchak states, "if Plaintiff had requested the opportunity to take his incidents reports home to complete at any time either when he worked part time or full time, it would have been denied." (Furchak Aff. ¶ 10.) Notably, however, Defendants fail to point to any evidence contradicting Plaintiff's claim that he was permitted, while a part-time security guard, to take his work home.

Based upon the present record, the Court finds an issue of fact as to whether Plaintiff communicated his request for an accommodation to Defendants, and whether such an accommodation could have been provided without trammeling upon the essential functions of the security guard position. Accordingly, Defendants' motion to dismiss Plaintiff's ADA claim for failure to accommodate is DENIED.

Plaintiff's NYHRL Retaliation Claims

"Plaintiff's claim of retaliation is analyzed under the McDonnell-Douglas framework. The NYHRL . . . require[s] the same standard of proof for a claim of retaliation as is required under the ADA." Kealy v. Consolidated Edison Co. of N.Y., No. 98-CV-2210, 2002 WL 1552027 at *6 (S.D.N.Y. July 15, 2002); see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Under the McDonnell-Douglas burden shifting paradigm, a plaintiff must set forth a prima facie case of retaliation, then the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the alleged retaliatory act. Where the employer sets forth a non-retaliatory reason for its action, the burden then shifts to the plaintiff to set forth facts demonstrating that the employer's reason was pre-textual. See Kealy, 2002 WL 1552027 at *4.

In order to establish a prima facie case of retaliation, a plaintiff must show: "(1) participation in an [activity protected by the ADA that was] known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Holt v. KMI-Continental, Inc., 95 F.3d 123, 130 (2d Cir. 1996); see Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).

Defendants move to dismiss Plaintiff's NYHRL retaliation claims on the grounds that: (1) Plaintiff has failed to proffer any evidence that there was any bad faith or retaliatory motive with respect to any of the actions Plaintiff complains of; and (2) Plaintiff cannot rebut Defendants' legitimate non-retaliatory reason for discharging him. The Court addresses each argument in turn.

A.  Plaintiff's Prima Facie Case

Defendants' objection to Plaintiff's prima facie case of retaliation stems from Plaintiff's purported failure to provide sufficient facts indicating that Defendants acted in bad faith. In other words, Defendants contend that Plaintiff has failed to set forth facts indicating a nexus between Plaintiff's protected activity and Defendants' purported retaliatory act. The Court agrees, in part.

At the outset, the Court finds that Plaintiff's termination is the only arguably viable factual predicate for Plaintiff's retaliation claims. Plaintiff's other retaliation claims concerning Defendants' decision to place him on a 26-week probationary period and maintain daily progress reports describing his performance are plainly unavailing. Both measures were adopted for all probationary guards commencing employment at the approximate time Plaintiff commenced his full time employment.

(Furchak Aff. ¶¶ 20-24; Boyd Aff.; Dietrich Aff.; Moody Aff.)[4]
Accordingly, the Court finds no basis to conclude that Defendants'
actions were retaliatory or discriminatory. In reaching this
conclusion, the Court rejects Plaintiff's contention that
Defendants fraudulently imposed upon him a 26-week probationary
period.

Plaintiff's argument may be explained as follows:
Plaintiff contends that Defendants were obligated, by Nassau County
Civil Service Rules, to initially impose only an eight week
probationary period, and that the period could only be extended to
twenty-six weeks upon written notice to Plaintiff. For this
proposition, Plaintiff relies upon the holding in Albano v. Kirby,
369 N.Y.2d 526, 369 N.Y.S.2d 655, 330 N.E.2d 615 (1975), in which
the New York Court of Appeals determined, inter alia, that, under
Suffolk County's Civil Service Rules, a probationary employee could
not initially be placed on a probationary period of twenty-six
weeks.

But Plaintiff fails to recognize that the Suffolk County
statute at issue in Albano was materially different from the

---

[4]     Plaintiff disputes the fact that other security guards were
subjected to the daily reporting requirements. In support of
this proposition, Plaintiff does not rely on any admissible
evidence, but simply contends that such daily reports were never
requested during discovery. Defendant points out, however, that
such reports were never requested by Plaintiff. The Court will
not permit Plaintiff to use his failure to request disclosure of
information pertinent to a particular fact as a shield against
its veracity.

statute at issue in the instant case.  The Suffolk County Civil

Service Rules provided in pertinent part that:

> (a) Except as herein otherwise provided, every
> permanent appointment from an open competitive
> list . . . shall be for a probationary term of
> not less than eight nor more than twenty-six
> weeks. . . .
> (c) <u>An appointment shall become permanent upon
> the completion of the minimum period of
> probation</u> unless the probationer, prior to the
> completion of such service, is given written
> notice by the appointing officer by mailing
> same to petitioner at least two business days
> prior to completion of probationary term, that
> the probationary term will be continued.

<u>Albano</u>, 36 N.Y.2d 528-29 (emphasis added).  In contrast, the Nassau

County Civil Service Rules provide:

> (a) [E]very permanent appointment from an open
> competitive list and every original
> appointment to a position in the non-
> competitive or labor class shall be for a
> specific probationary term of not less than
> eight nor more than twenty-six weeks except as
> herein otherwise provided.  The appointing
> authority shall report the appointment to the
> Civil Service Commission and indicate the
> specific term of the probationary period on a
> form to be provided by the Commission.
> (b) <u>An appointment shall automatically become
> permanent upon the satisfactory completion of
> the period of probation as set forth in the
> report of the appointment to the Civil Service
> Commission</u>.

(Defs.' Ex. W (emphasis added.)  Thus, there were no constraints on

Defendants' authority to impose a probationary period between eight

and twenty-six weeks and there was nothing fraudulent about the

determination to place Plaintiff on a twenty-six week probation

period.

Plaintiff's termination, however, is a different matter. Plaintiff had an extensive history of filing complaints against the County. Based upon his history, the Court finds sufficient evidence for a jury to conclude that Plaintiff was terminated because of his manifold complaints, which are protected by the NYHRL, as opposed to his deficient job performance. Accordingly, the Court finds Plaintiff has established a prima facie case of retaliation.

B. Rebutting The County's Non-retaliatory Reasons
   For Discharge

Notwithstanding Plaintiff's ability to state a prima facie case of retaliation, the County argues that it had legitimate non-retaliatory reasons for terminating. The County relies upon Plaintiff's evaluations, which indicate that Plaintiff was a marginal part-time employee and a deficient full-time employee. Plaintiff counters that the job demands for a part-time security guard were the same as those required of a full-time security guard. He maintains that his performance was adequate in the part-time capacity, and adequate in a full-time capacity. Thus, Plaintiff contends his termination was pre-textual, in response to his continuous complaints.

Based on the totality of the circumstances surrounding Plaintiff's termination, the Court finds that there are issues of fact concerning whether Plaintiff's termination was pre-textual. As explained above, Plaintiff's track record of challenging the

County's purported discriminatory actions raises an issue of fact as to whether Plaintiff was terminated because of his numerous charges, or his deficient job performance. Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's NYHRL retaliation claims is DENIED.

## III. Fraud Claims

In response to Defendants' motion for summary judgment, Plaintiff has WITHDRAWN his fraud claims.

## IV. Breach of Contract

Plaintiff bases his breach of contract claim upon two agreements: (1) the collective bargaining agreement ("CBA") between the County of Nassau and the Nassau Local 830 Civil Service Employees Association; and (2) the Settlement Agreement whereby Plaintiff was appointed to a full-time position. Defendants contend that Plaintiff's breach of contract claim must be dismissed because Plaintiff lacks any cognizable contract rights. Specifically, Defendants argue that during Plaintiff's probationary period, Plaintiff was an "at will" employee, lacking any protection under the CBA. Further, Defendants argue that Plaintiff's completion of the probationary period was an understood term of the Settlement Agreement. While the Court agrees that Plaintiff was not entitled to any protection as a permanent employee under the CBA, the Court finds that Plaintiff has stated a claim for breach of the Settlement Agreement.

A.    The CBA

The Parties do not dispute that Plaintiff's ability to bring a claim pursuant to the CBA hinges upon whether Plaintiff attained permanent employee status. (See Pl.'s Mem. of Law at 23; Defs.' Mem. of Law at 18-20.)  For the reasons explained above, Plaintiff was a valid probationary employee at the time of his termination.    Thus, his contract claims arising under rights provided to permanent employees under the CBA are DISMISSED.

B.    The Settlement Agreement

Plaintiff's claims predicated upon the Settlement Agreement, however, are distinguishable.[5]  Plaintiff settled his claims against the Parks Department in exchange for an appointment to a full-time position.    If Plaintiff establishes that his termination from the full-time position was retaliatory and in bad faith, he will have established a breach of the covenant of good faith and fair dealing implied in every contract.  See Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 300 (2d Cir. 1996) (recognizing that "the covenant of good faith and fair dealing . . . is implied in every contract under New York law unless there is an inconsistency between the covenant and the other terms of the contractual relationship").

---

[5]    The Court agrees with Defendants that there was nothing improper about imposing upon Plaintiff a probationary period — indeed, Nassau County's Civil Service Rules require the imposition of such a period.

Accordingly, the Court DENIES Defendants' motion with respect to Plaintiff's breach of contract claims.

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part, and DENIED in part. Plaintiff's fraud claims are deemed WITHDRAWN. To the extent Plaintiff alleges NYHRL retaliation claims based on his probationary status and daily evaluations, those claims are DISMISSED. To the extent Plaintiff bases his breach of contract claim on the rights guaranteed to him as a permanent employee under the collective bargaining agreement, such claim is DISMISSED. Defendants' motion is DENIED in all other respects.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    Central Islip, New York
          September 30, 2005